The first case we'll hear is United States v. Rey, docket number 13-3217. May it please the Court, my name is Omodari Jupiter, I represent the appellant, Janice Rey, and I would like to reserve five minutes for rebuttal argument. That'll be granted. Your Honor, the Court has limited the oral argument in this case to two issues. One, regarding the sentence of 125 months on counts 27-52, when those counts carry a statutory maximum of 10 years and 120 months. Right, that wasn't raised in any of the papers. It was not, Your Honor, and so I think that's the easier issue. I thought it was easier before I came in this morning, but I think the only issue would really be, since the Court sentenced the defendant to obviously an illegal sentence, is whether or not, number one, whether or not that's something that could be waived, and then number two, whether or not the Court can, I guess, substitute its own sentence or whether or not the matter has to be resentenced under any conditions. Your Honor, out of abundance of caution, and I've looked at some of the cases, I don't see any case, I did not find any case where an illegal sentence could be waived. Obviously, there are other situations where counsel fails to raise the argument. The constitutional right to challenge could be waived, but I have not seen that in this situation. I did find a few Third Circuit cases where the defense counsel did raise the argument, obviously, and the Court resentenced, even in the case where there was a 180-month sentence in United States v. Clay, 449, Fed Appendix 227. It's an unpublished opinion by Judge Cowen, and where there were legal sentences of 180 months, but there were 120-month sentences that were illegally provided. What did the Court do in that instance, Mr. Jupiter, send it back? The Court sent it back for resentencing. Your Honor, practically speaking, obviously, the practical situation of it, I'm sure opposite counsel will say the District Court is likely to give a maximum sentence and have it run concurrent. I just don't think that this Court can do that based on our research. Okay. So your position is we would need to vacate the demand for resentencing? Yes, Your Honor. Okay. Thank you. Now, Your Honor, the other issue is the issue of reopening, and the Court has indicated that that issue is restated, I think, that issue as to whether or not the District Court can reopen the record where there is an evidence to correct an evidentiary error. We would characterize the situation at the closing and at the time that the request was finally made for reopening as a situation where the government has, number one, failed to meet its burden. The District Court has directed the government that it failed to meet its burden, and the District Court has basically explained to the government that the evidence that fell short of meeting that burden has identified it, and then the government acts for in that situation. All in the space of about three minutes, right? I mean, this happened very rapidly as I read the record. Isn't that correct? Yeah, I wouldn't characterize it as very rapidly. I can't. Well, the government rested, and the defense put on no evidence, and the Court asked for argument and then promptly said, this is going to be hard for me to decide this without the warrants in the record, and the government said, well, then we move the, you reopen and put the warrants in the record. That all happened within literally minutes, didn't it? I can't say from the timing. I can't say from reading. I wasn't there, Your Honor, but I can't say from reading the record that it happened within minutes. I would say that that's probably a good guess at it. But what would happen, I'm sorry, Your Honor. Well, assume that that's the case for purposes of our discussion and that, in fact, as the government argues, the defense had the warrants and had had the warrants for a very long time so that what we're dealing with here is what the government freely admits was an inadvertent mistake in not moving the documents which had been marked into evidence. Why isn't that under blankenship, which we've noted approvingly in our cases, why isn't that sufficient to carry the day for the government as a reasonable excuse? Well, first of all, the district court never made a specific finding that this was a reasonable explanation. The district court characterized the explanation as being questionable. Number two, the district court was not, at least at the initial stage, was not reluctant. I think the district court was inviting rather than reluctant to reopen. Number three, the government, I think there's sufficient evidence of that it was not an inadvertence, but that it was closer to the situation in United States v. Coward where the government had a misunderstanding of what their burden was. But in this case, the government identified the warrant. It was attached to your client's motion. Yes, Your Honor. It was in the record, and as Judge Jordan was saying, that the only thing that didn't occur was I now move in exhibits, I think it may have been one and two or two and three, into evidence. Where's the prejudice? Because Coward also talks about prejudice. Where's the prejudice to your client? Other than the fact that if it weren't in evidence, the judge wouldn't have had any description of the premises to be searched or the things to be seized, so you would have just won. But whoever handled that hearing had an opportunity to probe if they chose to, but they didn't. Well, based on the timing that occurred was after both parties had rested. Now, I guess obviously counsel would say that counsel could have. Then counsel was in a position where the counsel has to decide whether or not to reopen himself because both parties had rested and you were at the stage. But also you have the prejudice, I think, of just being a disadvantaged, unfair litigant when the court is going to correct errors in terms of falling short of the burden of proof and also perhaps even a misunderstanding, and from the record, a misunderstanding of the law, and the court correcting it.  Because the government had those words marked, identified, and simply failed to move them into evidence. Doesn't the fact that they were marked for identification at the suppression hearing indicate that there was an intent to use them as part of the suppression record? I think, Your Honor, that every trial lawyer has evidence all the time that is on the fence about whether or not it's like I want to actually put the document in or whether or not I want to make reference to it. Because if I put the document in, there might be things in the document that hurts. Well, what's in the warrant that could hurt him? I've actually wondered about that myself. What's the conceivable downside to the government? You're implying that this was a strategic choice that the government made. What strategy could the government have had to think, you know what, I'm going to hold those warrants back? You know, Your Honor, we can't say. I think they brought out some differences in the warrant, but we cannot see what was in the government's counsel's head. It's contrary to what the government actually said. The government didn't say, well, we didn't, but we will now. They said we just forgot, basically, right? You know, Your Honor, I take issue with that. And there are a number of places before the government moved to reopen and even after the government moved to reopen where they insisted that they had met their burden. After the court said the burden is yours, isn't it? Have you moved anything into evidence for purposes of this hearing? Government counsel said, I don't think anything was moved into evidence. And then it further says that this is what the government would ordinarily need to meet its burden. And government counsel starts talking about these things were referenced and that he starts explaining exactly that he had testimony as to the particularity. Well, but doesn't that presuppose that they thought these were already in evidence? I mean, he's pointing out some of the other evidence supporting the, or the government's pointing out some of the other evidence supporting their position. I don't think it necessarily means that they made a conscious choice not to move this in. No, because after the court basically tells him you haven't put it in, he says, well, you have evidence from Agent McCall that he went to the Time Center building and he conducted the search at Time Center. And then after this matter is taken under advisement, after the government does move to it, later in the hearing, and this is on pages 72 to 73 in the hearing, in the hearing transcript, the government counsel says, Judge, I'm thinking that while the government has the burden of production in the suppression hearing, the burden of proving that there was no PC lies with the defense. That was similar to the Howard case. And he said, I think the government has put its burden of production when it put witnesses on the witness stand and described that a search warrant was, in fact, granted by the Superior Court. Well, let me just read you one thing from the record, okay? Because this pertains to what Judge Shigaris was asking. This is at page 149 of the appendix. The government's counsel is saying, I did neglect to move those items into evidence. They were referenced, and at this point we would ask to briefly reopen our case and have those documents admitted to evidence, Judge. And I'm curious why that shouldn't be reasonably understood to be a statement that, look, I marked them. I just forgot to move them. Because there's a difference between using the word of neglect. First of all, what he says before that when he tries to justify that he referenced them and what he says after that in terms of their burden, he believes he met that burden. And even afterwards, even though the government moved to, in their memorandum, afterwards, their post-hearing memorandum where they asked for it to be reopened, they even suggested to the Court that we're not even reopening it and we already have met our burden. All right. I just had two quick questions just to keep us focused. There were two premises searched. One was the home, one was the business. The fruits of that home were suppressed. So you're only focused on the reopening for the purposes of admitting the search warrant on the business, on the Time Center location. Am I correct? Yes, Your Honor. Okay. The second question I have is, how would this play out differently if during the course of the government's and the government offered them into evidence, the Court admitted it? How would it play out differently on cross-examination for Ms. Ray? I think the defense counsel would have then been able to, would have then asked more pointed questions using the actual search warrant and cross-examining on the search warrant rather than cross-examining on the testimony. Even though the search warrant was identified and it was attached to the motion? It was attached to your papers, right? It was, Your Honor. Right. But the government still, that didn't relieve the government of the burden, and the government made the decision as to whether or not to admit it. Thank you. Thank you. Thank you, counsel. May it please the Court, my name is Kim Chisholm and I represent the United States of America, the affilee in this case. Your Honor, I would also, if you don't mind, start out with the sentencing issue. That's a great idea. Okay. I actually encountered this issue in a case that was before another panel. It was the United States v. Ashley Andrews. It was, the identical situation is here with one exception. That site is 681 F3rd 509. That's a Third Circuit case. I'm afraid I just, it was about 2011, Judge, I'm sorry I don't have it here. But it was the United States v. Ashley Andrews. And what happened in that case was the identical situation where the defendant was sentenced to a 151-month general sentence based on multiple counts. Some of those counts didn't support the statutory, didn't support the guideline sentence. I think one of the counts was a five-year maximum. One of the counts was perhaps a ten-year maximum. The rest of the counts supported the 151-month sentence. The appellant didn't raise the issue in its initial brief, and I think in that case a reply brief was filed, but the issue wasn't raised. The government did raise the issue because it had come up in the context of a bail issue post-conviction before Judge Sanchez. You're saying the government discovered this. And so was it raised? It came up in the context of a bail issue that was a bail pending appeal. But it was still before the district court? It was at that point. It was before the circuit because the appeal had been docketed, but the bail proceedings were ongoing. The government raised the issue in its brief, and so in this case the panel decided, you know, they analyzed it under the waiver and looked at the three factors, one of which is whether or not there was some excuse for the appellant's failure to raise the issue in the opening brief, the second factor being the extent to which the opposing party would be prejudiced by our considering the issue, and three, whether failure to consider the argument would lead to a miscarriage of justice or undermine confidence in the judicial system. In this case, obviously, the factor number one weighed against the appellant in that case. Number three weighed against the government in the case because of the law that on the miscarriage of justice factor, this court has held in the context of plain error review that a general sentence error under the sentencing guidelines affects the defendant's substantial rights and results in manifest injustice. So that weighed against the government. And with respect to the second factor, the extent to which the opposing party would be prejudiced because we brought it up, that basically weighed against us. So it was remanded for a limited resentencing for actually the language of the case was to clarify the sentence on certain counts. So what's your position in this case, then? Well, based on that, my position is that there is error as to counts 27 through 52 because the maximum statutory sentence is 10 years, 120 months. Right. She got 125 months. But there is error. And if it is remanded, my request would be for the court to do so. What was your position? It should be remanded? Well, with respect to the first factor, clearly that weighs against the appellant. They haven't articulated why they didn't raise it. With respect to the third factor, it weighs against the government here. The second factor, it weighs against the appellant here. So if you balance it out, in this case, the government would be prejudiced by a resentencing. How? How would the government be prejudiced by the defendant getting a lawful sentence? And particularly in a case where the government is pleading vigorously that don't hurt us for an inadvertent mistake when we fail to move our evidence in during the suppression hearing, but let the defendant have it for what appears to be an inadvertent mistake and not calling the district court on an illegal sentence. Judge, part of the reason why my intention, and when I addressed the factors it was merely because this has come up in the context, the identical situation, my intent was not to argue against a remand. Okay. A resentencing because, you know, of that one, the first factor, clearly how can I say neglect is a problem for you but it's not for us? Bottom line, no. I'm taking it, and correct me if I'm wrong, that the government is fine with a remand, recognizes that the sentence is an illegal sentence and that it has to be corrected and that you're not opposed to a remand. No, and what I was going to ask for, Your Honor, is merely that the court specify that it's remanded for the limited purpose of the clarification with respect to 27 through 52 and that it not be a general remand for a resentenced de novo. And if my colleagues will indulge me, I don't think anybody has asked for more than that. Are we correct about that, Mr. Jupiter? When you said remand, you're fine with that sort of limited remand that Ms. Chisholm has described, correct? Yes. Okay, fine. Thank you. Thank you, Your Honor. Probably move on then. Yes. Great. With respect to the other issue, the paramount issue, I would say that the primary focus, and that's Kithcart and Coward reciting the blanket ship test, so to speak, is that the primary factor should be prejudice. This circuit has, in more recent years, emphasized that it's a paramount factor, prejudice, and I would submit that if we look at that factor, it weighs against the defendant. And I think the defendant was specifically asked at the hearing, which occurred prior to trial on whether or not the defendant would be prejudiced by allowing the exhibits to come in, and the defendant said he would be prejudiced by allowing the evidence on the Friedenhoi warrant, which was the resident's warrant. Can I ask you a question, Ms. Chisholm? Yes. And your colleague, your opposing colleague here has made a point of this in oral argument as well as in the papers, that our law, based heavily on the Sixth Circuit's blanket ship case, makes the point that we should be, quote, extremely reluctant, unquote, to grant reopening. Judges should be extremely reluctant to grant reopening. And in this case, the district judge, as the defense characterized it, was not extremely reluctant, actually suggested it, said you should do this, in effect. Is that a problem for any reason? No, it isn't, because I think in blanket ship, that case is with respect to reopening after a remand, and here that's the distinction that we have. This isn't reopening after a remand. Blanket ship dealt with reopening after a remand. So that's one distinction. The other thing is that when there was the problem with not actually offering the exhibits that were marked and to be admitted, at that time, once it came up, which was right at the argument, Judge Gomez at that point said, you know, like, I don't have anything before me. Counsel said, I did neglect to put these in. I'd like to move them in now. I'd like to briefly reopen to admit them now. Counsel objected. Thereafter, Judge Gomez ordered briefing on the issue. I think first there was a recess. Then they came back. There was briefing. And then they came back. They argued some more. And then there was a request to have briefing by that Tuesday. And then there was supplemental briefing that was filed of record on January 29th. And then it wasn't until, I believe, April 3rd or 4th that the hearing actually occurred. So it wasn't, like, snap, one, two, three. The judge considered, you know, the arguments of the parties in determining that there was no prejudice. And with the timing factor, which is really the factor that Blankenship says is important to the consideration of whether there's prejudice, the timing was immediate here. We don't have, like, a delay where, like, for instance, in Kithcart, where it was remanded back to the court to consider certain issues. And then the government decided, I'd like to put in additional evidence. And the defense moved in limine to preclude the government. We have an immediate motion to reopen. Was Ray given a chance to rebut the search warrant once it was admitted? In argument, Your Honor, I think that the Ray attached the warrant to her motion originally in August when it was filed. During the hearing, Ray cross-examined to the extent, you know, that the witnesses were questioned on the exhibits. You know, Ray knew what the exhibits were at the time. Ray questioned certain aspects of the issuance of the warrant. Ray's primary problem with the warrant was the fact that it wasn't issued by a federal magistrate judge. That was Ray's focus at the hearing. And it's pretty clear that that was Ray's focus. Ray also was focused on whether there was sufficient particularity of the property to be seized and the places to be searched. I'm sorry. Go ahead. Can I just roll back for one minute? If basically I forgot is a reasonable explanation, what's an unreasonable explanation for not moving it in? Well, you know, that's an interesting question, Judge, because I think that — Here's what I'm getting at. You know, we've got to fashion a test, and we've got some case law on this, but we know prejudice is a factor. But is — does an explanation really matter at all? No. I don't — well, cases are moving away from the need for an explanation. Okay. But if you look at blankenship and the test as originally envisioned, it just has to be a reasonable and adequate explanation as one of a number of factors, you know, like the relevance of the timing, the relevance, whether or not the party has an opportunity to rebut. Those are all factors to be considered. The — I think the question of whether it's newly discovered or whether the government had it in its possession at the time and didn't use it, those are not — Yeah, but how does that answer the question that Judge Garris has put to you, which is if oops, I blew it, is it good enough, then is there any such thing as a not-good explanation, other than, you know, we hate you, Judge, and we're not showing — I mean, I suppose you could come up with some fanciful, crazy reason, but what would be a not-good reason that — so that we could really articulate a test that would show a dividing line between what's reasonable and adequate and what's not reasonable and adequate? It's a stumper. Well, you know, perhaps like — maybe perhaps like a decision, if you could ever elicit that there was, you know, like a — I want to say an intentional decision not to — Well, that's what your adversary was talking about as well. It kind of brings us back to his argument. He's suggesting that perhaps this is a strategic decision. Right, but that's — Is that — how do you view the record on that? I view the record as what counsel stated at the time, which was I did neglect. That's the first thing out of his mouth, and that's what is — I mean, I know that it was neglect, because as I stated to the district judge, I prepared the suppression, you know, hearing binder, and those exhibits were marked for a purpose. When he said I did neglect, that came shortly after, you know, the issue came up that they weren't there. So I believe that that is the reason he neglected and that he then attempted to rectify that, and he was met with opposition. And counsel, when he was asked to explain what the problem was and how he was prejudiced, he said I really can't think of a reason except that with respect to the residence warrant, you know, I would have included it in my motion to suppress had I had it. That was his sole reason, his sole claim of prejudice, Your Honor. Okay. So your adversary now is talking about the potential prejudice by not having the affidavit — sorry, the search warrant moved into evidence when he says that, well, there might have been further inquiry on its four corners. You're saying that was not the explanation offered to the district court, correct? That's right. And I think at that time, had counsel then said, Judge, I need to, you know, I'd like to have additional testimony, that could have been accommodated, and that never came up either. Counsel did not ask for a continuance and did not request to, you know, recross on the evidence once it was in. And is it your position that even the absence of a continuance reopening to reexamine the witness, it wouldn't have mattered because what's dispositive for the purposes of particularities, is what the warrant says. Right. Am I right? Yeah. And the warrant was, it was attached and it was sufficient in its particularity as to the place to be searched and the property to be seized. Thank you. Okay. Anything more, counsel? No, Your Honor. Okay. Thank you. Thank you, Your Honor. Your Honor, I would just go back to the reference, to the record in terms of what was the first thing that counsel said. The counsel makes reference after the court talks about him not beating his burden. He indicates that the court has the testimony from Agent McCall that he went to the time, sent a building. And the court asks whether or not the affidavits, the search warrant was in record. He only says that they were referenced. It's not after the court. And I think this is key in terms of timing. The timing, I think, doesn't just work. What are you looking at? First to a page in the record, if you would, Mr. Jupiter. Your Honor, it's 36 on the, I don't have the, I have the record equivalent of it, but it's 36 on the transcript. Thirty-six to the transcript. Okay. So that would be appendix page 146? Yes, Your Honor. And what is it you're reading? And, Your Honor, the indication after the court asks whether or not it was the counsel's burden and that he hadn't moved anything in the evidence, he tells the government that Ms. Ray's challenge was clear and that since this is an evidentiary hearing in which the government ordinarily meet its burden, all of this is stated before counsel moves, says, well, I neglected to move it into evidence. And then counsel actually says, before he says I neglected, he tells the court, you have evidence from Agent McCall that he went to the Time Center building and conducted the search. I'm sorry. What are you looking at when you say you have evidence from Agent McCall? I'm trying to find the line numbers in page so I can follow precisely what you're saying. So you were on page 36. You quoted from the court. Now where are you? Page 37, 38 in the transcript? Where are you? I think it's 37 lines 15 through 17. I don't know if that's helpful. Judge Jordan? Okay. So you're on appendix page 147 lines 15 through 17. Yes, Your Honor. So your point is that in trying to say, Your Honor, maybe you've got enough, that he's arguing that he made a strategic decision not to put it in? That's the position? I think that it negates the position of the government that it was clearly inadvertent. And I think, but more importantly, Your Honor, I think that it puts the defense at a strategic disadvantage because it's not just the timing with respect to how much longer it was after the evidence was submitted or the evidence was not submitted. It is after everything that has happened and after the court has given direction specifically that I need this or you're not going to make your burden. I'm still not following you, though, Mr. Jupiter, about how you're unfairly prejudiced by that. You're no more unfairly prejudiced by that than if Mr. Potter, the government's lawyer, had said nothing and just said, I move to reopen. I mean, the fact that he said, well, you have certain evidence before you now, how does that change the calculus of prejudice? I don't think it changes the calculus of prejudice with respect to the evaluation of the evidence. I think it changes the calculus of prejudice with respect to whether or not the litigants can feel that they're getting the same treatment, both parties, the party with the burden and the party without the burden is getting the same treatment. If the court is going to say, the party with the burden, if you're not meeting it, I'm going to tell you how to meet it. It's not like the court is going to turn around and say, well, to negate the burden, this is what you should do. But here the district court goes on, and Judge Jordan was asking when you addressed us earlier how many minutes, and this happens to have a time stamp on the side in the record. I don't know that you have that one in front of you, and it was about two minutes between the time this issue was first mentioned and the statement that said I neglected to move it into evidence. But shortly after that, the district court says, trials are about the search for truth. I'm not trying to assist the government. That's a quote from Appendix 149. How can we ignore that goal where I haven't heard either how there was prejudice? So I guess I'd like to ask you, where was the prejudice? Well, Your Honor, other than, and obviously the court doesn't see, I don't think there's a prejudice in terms of, as I stated before, the counsel didn't state any prejudice with regard to how the evidence, I guess the evidence going in at trial would prejudice them. But, Your Honor, first of all, I would like to say that I don't think that the court, this court at least at this stage, has stated that there's not a requirement for a reasonable explanation, even when there's no prejudice. And I think that that's key here. My other argument with regard to prejudice is just that it's just the unfairness of the system. Can you respond to the question that Judge Chigaris put to Ms. Chisholm and tell us what a sensible dividing line between reasonable and adequate explanation and not reasonable, not adequate explanation would be? The, I don't, I can't really think, I think that the district courts have looked at it in terms of the type of, in terms of the type of evidence when it's either technical or whether or not it's something more than technical. And that's what changes. The reasonableness of the explanation changes when you're looking at the type of evidence. Is it a type of evidence that's going towards a technical requirement? I don't know that I can say that there should be, certainly if it's only an advertence, then I think that the court should be reluctant to admit it if the evidence is something that substantively is required to fulfill the government's burden. All right. Thank you. All right, counsel. Thank you so much. We will take the case under advisement. And if counsel have no objection, the panel would like to come down from the bench and greet counsel and thank them for their advocacy. If we can go off the record.